# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CADEAU and MICHELLE CADEAU, individually and as the representatives of a class of similarly-situated persons,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>KALEO HOLDINGS, INC. and KALEO, INC., Virginia corporations,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>) **CLASS ACTION**<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiffs, JAMES CADEAU ("James") and MICHAELLE CADEAU ("Michelle") (collectively, "Plaintiffs"), through their attorneys, bring this action on behalf of themselves and all others similarly situated, and allege the following against Defendants, KALEO HOLDINGS, INC. and KALEO, INC. ("Defendants"):

## PRELIMINARY STATEMENT

1.　　This case challenges Defendants' practice of sending unsolicited automated text messages to the cellular telephones of Plaintiffs and Class members in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA"), and the regulations promulgated thereunder by the Federal Communications Commission ("FCC").

2.　　Defendants sent at least one unauthorized text message (the "Text") to Michelle's cellular telephone using an automatic telephone dialing system ("ATDS" or "auto-dialers") for the purpose of soliciting business from Plaintiffs.

3.　　The TCPA regulates, among other things, the use of auto-dialers. Specifically, the TCPA prohibits the use of auto-dialers to make <u>any</u> call to a cellular telephone number in the

absence of an emergency or the prior express consent of the person being called.  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

4. The TCPA defines ATDS as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C§ 227 (a)(1).

5. The FCC is empowered to issue rules and regulations implementing the TCPA. The FCC has clarified that text messages qualify as "calls" under the TCPA, affirming that:

> under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order ("*2003 Order*"), 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis added); *see Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 269 n.2 (3rd Cir. 2013).

6. The FCC has further clarified that, except for calls made by tax-exempt nonprofit organizations or health care messages, any telephone call using an automatic telephone dialing system that includes or introduces an advertisement or constitutes telemarketing must have prior express <u>written</u> consent as provided at 47 C.F.R. § 64.1200(f)(8) to be compliant with the TCPA. 47 C.F.R. § 64.1200(a)(2). (emphasis added).  The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

7. The FCC has found that automated or prerecorded calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The

FCC also recognized that wireless customers are charged for incoming calls whether they can pay in advance or after the minutes are used. *2003 Order*, 18 FCC Rcd. 14014, 14115.

8. Plaintiffs, on behalf of themselves and all others similarly situated, bring this case as a class action asserting claims against Defendants under the TCPA.

9. Plaintiffs are informed and believe, and upon such information and belief aver, that this action is based upon a common nucleus of operative facts because the unsolicited automated text messages at issue were and are being sent in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA.

10. This action seeks relief expressly authorized by the TCPA: (a) injunctive relief enjoining Defendants from sending unsolicited automated text messages without prior express consent; (b) injunctive relief enjoining Defendants from sending unsolicited automated text messages that includes or introduces an advertisement or constitutes telemarketing without prior express written consent; and (c) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and, in the event of finding a willful or knowing violation, to have such damages trebled, as provided by § 227(b)(3) of the Act.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside within this judicial district and Defendants have made contacts within this judicial district and/or have committed tortious acts within this judicial district.

## PARTIES

13. Plaintiffs are, and at all times mentioned herein were, citizens and residents of New Jersey. Plaintiff James Cadeau is the primary subscriber to the cellular service family plan that received Defendants' text.

14. Plaintiff Michelle Cadeau is James' wife who uses a cellular telephone number that is part of James' family plan. This is Michelle's personal telephone number and has been for all pertinent times hereto. Michelle is the sole and authorized user of the cellular telephone number that received Defendants' text.

15. Defendants, kaleo Holdings, Inc. and kaleo, Inc., are Virginia corporations.

16. Defendants are "a new type of pharmaceutical company, dedicated to building innovative solutions for serious and life-threatening medical conditions. We believe patients are caregivers are the experts on how their medical condition impacts their lives and are an integral part of our product development process.…Our Mission To invent, manufacture and commercialize life-transforming products that empower patients and families to live fuller, bolder lives. And Develop innovative solutions that support the healthcare provider-patient relationship, unleashing access to life-transforming products."[1] A second website, www.auvi-q.com, states "AUVI-Q and AUVI-q are registered trademarks to kaleo, Inc." This site also provides the same telephone number, 844-357-3968, as is provided in the Text sent to Plaintiffs.

## FACTS

17. On or about November 5, 2020, Michelle received a text message on her personal cellular telephone stating "We received your AUVI-Q prescription and have not been able to reach you. Please call 844-357-3968…" A screenshot of the November 5, 2020 text is attached hereto

---

[1] Information obtained from Defendants' website, www.kaleo.com, last visited February 23, 2021.

as Exhibit A. The text was sent from a telephone number 84790, which is a short code telephone number.

19. Plaintiffs have never ordered AUQI-Q from nor done business with Defendants.

19. The text message provides promotional content for Defendants' products or services and was sent with the goal of enticing Plaintiffs to utilize its products and services and to contact Defendants to learn more about them.

20. The Text is impersonal in nature and the message utilizes boilerplate language. Thus, on information and belief, the Text was sent to recipients *en masse*.

21. Additionally, the Text was sent using a short code telephone number. Plaintiffs are informed and believe, and upon such information and belief aver, that short code telephone numbers are used by companies, such as Defendants, to message consumers *en masse*. The use of short code is indicative of non-human messaging because people do not have cellular phones with short codes.

22. Based on the foregoing, no human directed the text message to Michelle's cellular number; rather, Michelle's number was called using a random or sequential number generator with the capacity to store or produce those numbers. In other words, on information and belief, Defendants sent or transmitted, or had sent or transmitted on its behalf, the Text to Michelle's cellular telephone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A) and the FCC.

23. Plaintiffs never provided her cellular telephone number to Defendants.

24. Plaintiffs never requested, desired, permitted, or otherwise provided her prior express consent to Defendants to send or transmit the Text or any other texts to her cellular telephone.

25. Plaintiffs never provided their prior express written consent to Defendants to send or transmit the Text or any other advertisement or telemarketing to her cellular telephone.

26. As a result of receiving the Text, Plaintiffs incurred expenses to their wireless service, wasted data storage capacity, suffered the nuisance, waste of time, and aggravation that accompanies receipt of such unauthorized advertisements, and was subjected to an intrusion upon her seclusion and invasion of privacy.

27. On information and belief, Defendants sent the Text, or other text messages, *en masse* to a list of thousands of randomly generated cellular telephone numbers using an ATDS.

28. On information and belief, Defendants sent the Text, or other text messages, to Plaintiffs and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers without human intervention.

29. On information and belief, Plaintiffs and the Class members did not provide Defendants with prior express written consent to receive such text messages and, as a result, incurred expenses to their wireless services, wasted data storage capacity, suffered the aggravation that accompanies receipt of such unauthorized advertisements, and were subjected to an intrusion upon seclusion.

## CLASS ACTION ALLEGATIONS

30. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiffs bring this class action on behalf of the following Classes:

### Autodialed Class

All individuals in the United States who, within the four years prior to the filing of the instant Complaint, received one or more texts to their cellular telephones from Defendants through the use of an

automatic dialing system and who did not provide prior express consent to receive such text messages.

### Autodialed Telemarketing Class

All individuals in the United States who, within the four years prior to the filing of the instant Complaint, received calls and/or texts advertising Defendants' property, goods, or services to their cellular telephones from Defendants through the use of an automatic dialing system and who did not provide prior express written consent to receive such calls/texts.

Excluded from the Classes are the Defendants and their officers, directors, employees, and agents and members of the Judiciary. Plaintiffs reserves the right to amend the class definition upon completion of class certification discovery.

31. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiffs are informed and believes, and upon such information and belief aver, that the number of persons and entities of the Classes is numerous and joinder of all members is impracticable. Plaintiffs are informed and believe, and upon such information and belief aver, that the number of Class members is at least forty (40) based on Defendants' use of automated and impersonal text message content sent via a telephone number with an automated message center.

32. <u>Commonality (Fed. R. Civ. P. 23 (a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

    a.    Whether Defendants sent non-emergency text messages to Plaintiffs and the Class members' cellular telephones using an automatic telephone dialing system;

    b.    Whether Defendants had prior express written consent to send their automated text messages;

    c.    Whether Defendants' conduct was knowing and/or willful;

      d.      Whether Defendants are liable for damages, and the amount of such damages; and;

      e.      Whether Defendants should be enjoined from such conduct in the future.

33.    <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:  Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs received the same or substantially similar unsolicited text messages as the other Class members sent by or on behalf of Defendants advertising the availability or quality of goods and services of the Defendants during the Class Period. Plaintiffs are making the same claims and seeking the same relief for themselves and all Class members based upon the same federal statute. Defendants have acted in the same or in a similar manner with respect to Plaintiffs and all the Class members by sending Plaintiffs and each member of the Class the same or other text messages.

34.    <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs are interested in this matter, have no conflicts, and have retained experienced class counsel to represent the class.

35.    <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

      a.      Proof of Plaintiffs' claims will also prove the claims of the Class without the need for separate or individualized proceedings;

      b.      Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

  c. Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to Plaintiffs and all Class members;

  d. The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

  e. This case is inherently manageable as a class action in that:

   i. Defendants identified persons or entities to receive the unauthorized text messages and Defendants' computer and business records will likely enable Plaintiffs to readily identify class members and establish liability and damages;

   ii. Liability and damages can be established for Plaintiffs and the Class with the same common proofs;

   iii. Statutory damages are provided for in the statute and are the same for Plaintiffs and all Class members and can be calculated in the same or a similar manner;

   iv. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

   v. A class action will contribute to uniformity of decisions concerning Defendants' practices; and

   vi. As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

**Violation of 47 U.S.C. § 227(b)(1)(A)(iii) – ATDS/Telemarketing Calls**

36. As stated, the TCPA prohibits the use of auto-dialers to make <u>any</u> call to a cellular telephone number in the absence of an emergency or the prior express consent of the person being called. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC has further clarified that, except for calls made by tax-exempt nonprofit organizations or health care messages, any telephone call using an automatic telephone dialing system that includes or introduces an advertisement or constitutes telemarketing must have prior express <u>written</u> consent as provided at 47 C.F.R. § 64.1200(f)(8) to be compliant with the TCPA. 47 C.F.R. § 64.1200(a)(2) (emphasis added).

37. Michelle received at least one text from Defendants on November 5, 2020. The Text is an advertisement as defined by 47 C.F.R. § 64.1200(f)(1) because it promotes Defendants' property, goods, or services.

38. The Text was an impersonal advertisement from Defendants and sent to Michelle's cellular telephone.

39. Plaintiffs provided neither their prior express consent nor their prior express written consent to receive such text.

40. Based on the foregoing, on information and belief, Defendants sent the same or substantially similar texts to the Class members *en masse* without their prior express consent or prior express written consent.

41. Defendants sent the Text, or had it made and sent on their behalf, using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

42. Defendants utilized equipment that sent text messages, including the Text here, to Plaintiffs and other Class members simultaneously and without human intervention.

43. By sending such texts to Plaintiffs and the Class, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

44. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. To the extent the Court finds that Defendants' conduct was knowing or willful, the Court may treble the amount of damages. Plaintiffs and the Class are also entitled to an injunction against future calls and/or texts by or on behalf of Defendants that utilize an ATDS.

WHEREFORE, Plaintiffs, JAMES CADEAU and MICHELLE CADEAU, individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendants, KALEO HOLDINGS, INC. and KALEO, INC., jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the Class, and appoint the Plaintiffs' counsel as counsel for the Class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and award treble damages if the violations were done willfully and/or knowingly;

C. That the Court award prejudgment interest from the date the Text was sent to the date the Court enters judgment;

D. That the Court enjoin the Defendants from additional violations; and

E. That the Court award costs and such further relief as the Court may deem just and proper.

Respectfully submitted,

JAMES CADEAU and MICHELLE CADEAU, individually and as the representatives of a class of similarly-situated persons,

By: /s/ Aytan Y. Bellin
Aytan Y. Bellin
**BELLIN & ASSOCIATES LLC**
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: 914-358-5345
aytan.bellin@bellinlaw.com

Ryan M. Kelly *(pro hac vice* to be submitted)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile: 847-368-1501
rkelly@andersonwanca.com